609 P.2d 589

The STATE of Arizona, Appellee,

v.

Ronald Frank RODRIGUEZ and Raul Thomas Rodriguez, Appellants.

No. 2 CA–CR 1277.

Court of Appeals of Arizona, Division 2.

Feb. 13, 1980.

Rehearing Denied March 26, 1980.

Review Denied April 15, 1980.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Donald S. Klein, Tucson, for appellants.

## OPINION

HATHAWAY, Chief Judge.

After a jury trial, appellant Ronald Rodriguez was found guilty of conspiracy to commit or have another commit robbery and was sentenced to not less than 10 nor more than 12 years in the Arizona State Prison. Appellant Raul Rodriguez was found guilty of robbery while armed with a gun as well as conspiracy to commit or have another commit robbery and was sentenced to not less than five nor more than 15 years in prison on the robbery charge and not less than five nor more than 15 years on the conspiracy charge, the sentences to run concurrently. Appellants have jointly filed this appeal, raising four points for our consideration. We find no error and affirm.

■ Appellants' first claim is that the trial court erred when it denied their instruction concerning the defense of entrapment. They argue that although they did not admit the crimes charged, they admitted most of the facts upon which the charges were based. Appellants cite many federal cases in support of their position. However, Arizona law is consistent in holding that before a defendant is entitled to claim entrapment, the crime must be admitted as well as substantial elements of the crime. *State v. Montano*, 117 Ariz. 145, 571 P.2d 291 (App.1977), citing *State v. McKinney*, 108 Ariz. 436, 501 P.2d 378 (1972), and *State v. Vitale*, 23 Ariz.App. 37, 530 P.2d 394 (1975). *Montano* specifically took note of the federal authority, epitomized by *United States v. Demma*, 523 F.2d 981 (9th Cir. 1975), but here, as there, we specifically refer to Arizona law for our determination. Appellants' refusal to admit all the elements of the crime as well as the specific crime itself made the refusal of their entrapment instruction proper. Furthermore, there was no evidence of entrapment relating to the crimes charged.

■ Appellants argue that it was error for the trial court to deny their motion for judgment of acquittal due to insufficient evidence of a robbery or of a conspiracy to rob. The facts show that the undercover narcotics agent gave $83,000 to Raul Rodriguez so that he could count it as a preface to the drug transaction. After Raul counted it, he apparently used a threat of infliction of force or fear in keeping the property. Appellants rely on *Lear v. State*, 39 Ariz. 313, 6 P.2d 426 (1931), for the proposition that since Raul took the money without the use of force or fear, his conduct may have been theft, but it was not robbery. In support of their contention, they quote from *Lear*:

"The crimes of robbery and larceny are not the same. The former is classified as a crime against the person and the latter as a crime against property. In robbery there is, in addition to a felonious taking, a violent invasion of the person. If the person is not made to surrender the possession of the personal property by means of force or fear, the dominant element of robbery is not present. The mere taking of property in possession of another, from his person or immediate presence and against his will, is not robbery. Such taking must be accomplished by force or fear to constitute robbery." 39 Ariz. at 314, 315, 6 P.2d at 427.

An explanation of the difference between larceny and robbery is given in R. Perkins, Criminal Law (2nd ed. 1969):

"Blackstone, to emphasize that for robbery the larceny must be accomplished by violence or intimidation, said: 'for if one privately steals sixpence from the person of another, and afterwards keeps it by putting him in fear, this is no robbery, for the fear is subsequent, . . . .' Occasionally this has been misapplied. For example, during a chance meeting D suggested he might be interested in buying

the gun X was carrying and asked permission to examine it, which was granted. Finding the gun loaded D then pointed it at X and told him to run for his life. As X backed away, D ran off with the weapon. A conviction of robbery was reversed on the theory that the resort to intimidation was after the acquisition of the gun. This completely overlooks the distinction between possession and custody. When D received the gun to examine momentarily in the presence of X, D had custody only. Had he run off with the gun without violence or intimidation he would have been guilty of larceny because this would have been a trespassory taking and carrying away with all the elements of that offense. And since he actually did this under a threat to kill he clearly committed robbery, as the same court had held earlier under an equivalent set of facts. (Citations omitted)" Perkins at 283, 284.

Control of the money was still with the undercover agent even though he had given up custody of it. He only relinquished control of the money when he felt he was going to be shot. The force or fear necessary to constitute a robbery under *Lear v. State*, supra, was present. Since control of the money was obtained by force, a robbery occurred and the trial court did not err when it denied motions for acquittals on the robbery charges.

■ Appellants' complaint that they were entitled to acquittal on the conspiracy count is also without merit. A co-conspirator testified that appellants planned a "rip off" from the beginning, referring to the robbery. Ronald procured a gun that Raul took with him. Ronald and the co-conspirator waited nearby for Raul and the plan was that Raul would obtain the money and return to where they were waiting and switch automobiles. During the transaction, Raul went to where his two co-conspirators were waiting and conferred with them. He was concerned because he had not been able to talk the undercover agent into leaving the meeting place with the money. Raul returned to where the under-

cover agent was waiting and other officers watching suspected that he was carrying a weapon. Civilian bystanders also saw Raul holding the gun. After the robbery, Raul returned to where his two cohorts had been waiting and asked someone where they were. The gun holster was found in the car Raul was driving and Raul admitted afterwards to his friend that he had "flashed" the gun at the undercover agent and later threw it out the car window as he sped away. There was substantial evidence from which the jury could infer that appellants conspired to commit robbery.

■ The trial court did not err when it submitted the forms of verdict. Raul argues that it was error for the court to refuse to submit a form of verdict which would have allowed the jurors to find him guilty of robbery without an allegation that he was armed with a gun. A defendant is entitled to have the jury instructed on every form of verdict justified by the evidence. *State v. Edgin*, 110 Ariz. 416, 520 P.2d 288 (1974). A defendant is entitled to a lesser-included offense instruction only where there is evidence upon which the jury could convict of a lesser offense and at the same time find that the state had failed to prove an element of the greater crime. *State v. Jerousek*, 121 Ariz. 420, 590 P.2d 1366 (1979). There is no evidence that Raul committed the robbery by any means except armed with a gun. The agent was put in fear because of the gun and Raul later admitted to a co-conspirator that he had "flashed" the gun. Raul denied use of the gun when he testified although he freely admitted his attempt to steal the money. Had the jurors not believed there was a gun, there was no evidence on which they could have found the necessary force or fear to find Raul guilty of robbery.

■ Appellants' last point is that it was error when the trial court denied their motions for new trial. Alleged juror misconduct was the basis for the motions. The granting of a new trial on the basis of jury misconduct is a matter within the sound discretion of the trial court. *State v. Rocco*, 119 Ariz. 27, 579 P.2d 65 (App.1978). Four

separate instances of misconduct are alleged. The first is that juror Lynch failed to disclose that she knew Detective Hemenway. Lynch, a co-worker of the detective's wife, did not tell the trial court that she knew any of the prospective witnesses because she felt she did not know him. She believed she might have seen him once, but was not sure whether she had ever met him. We see no possible error under the circumstances. The second alleged instance is aimed at the prosecutor. The detective testified at the hearing on the motion for new trial that he did not remember meeting Lynch and did not recognize her in the jury box. He had looked at the jury list and recognized Lynch's unusual first name. After checking with his wife, he determined that she was employed at the same place as his wife and suggested to the prosecutor she be excused from the panel because of friction between his wife and Lynch at work. Hemenway never discussed the case with his wife or with Lynch and again, we can see no error or prejudice to appellants. The final complaints concern a telephone call Lynch made to Hemenway's wife during the trial. The purpose of the call was unrelated to the trial but during the conversation, Lynch told Mrs. Hemenway to tell her husband to learn how to spell Der Wienerschnitzel. During trial, it was adduced that Ronald had been arrested near the fast-food place called Der Wienerschnitzel and Hemenway could not spell Wienerschnitzel. There was no discussion about the facts of the case during the telephone call and Lynch did not realize she might have violated the court's admonition. Mrs. Hemenway relayed that comment to her husband who said he had to learn how to spell the word and made no further comment. The Hemenways, as did Lynch, forgot about the telephone call because nothing about the trial was discussed and Hemenway had no contact with Lynch. The trial court, as a consideration, and after dealing with Lynch's conduct in strong terms, found no prejudice to appellants. We believe the court was correct. There was no relationship between Lynch and the detective that would raise a presumption to give the testimony greater credence. We cannot say that the trial court abused its discretion in not granting a new trial based on such misconduct.

Affirmed.

HOWARD and RICHMOND, JJ., concur.