660 P.2d 849

**STATE of Arizona, Appellee,**

v.

**Genaro CELAYA, Appellant.**

No. 5288.

Supreme Court of Arizona,
En Banc.

Jan. 17, 1983.

Rehearing Denied March 15, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Lawrence H. Fleischman, Asst. Public Defender, Tucson, for appellant.

HAYS, Justice.

Jerry Celaya was convicted of armed robbery, A.R.S. § 13–1904, and first degree felony-murder, A.R.S. § 13–1105(A)(2). He was sentenced to life on the murder charge and to a concurrent term of ten and one-half years for the robbery. We have jurisdiction of the appeal pursuant to Ariz. Const. art. 6 § 5 and A.R.S. § 13–4031.

On November 30, 1979, Jerry Celaya and John Walker, an undercover narcotics agent with the Department of Public Safety (DPS), met at the Tucson airport to conduct a sale of cocaine. After the purported exchange of drugs took place, the appellant shot and killed John Walker.

At trial, the appellant presented evidence that he was a long-time informant for various law-enforcement agencies concerned with narcotics. His story is that several years ago he met a Mexican drug dealer in connection with his informant activities for the Federal Drug Enforcement Administration. Celaya began hearing persistent rumors that the Mexican dealer wanted to kill him. Fearing for his life, Celaya eventually formulated a plan whereby he would pretend to sell drugs but would instead steal the money from the drug purchaser and use it to bribe Mexican officials to arrest the Mexican drug dealer.

John Walker heard through another informant working for DPS that Celaya sought a purchaser of cocaine. He planned to go undercover and pose as a buyer in order to arrest Celaya in the act of selling drugs. On the agreed-upon day, the two men met at the Tucson airport where DPS agents had taken up surveillance. The agents watched as Celaya took a bag from Walker's car, put it in his own vehicle, took a rectangular bag from his trunk and carried it to Walker's car. Celaya's container of "drugs" that he delivered to Walker held only clothes and old shoes. Appellant then reached in and snatched the keys from Walker's car ignition. At this point the shooting of Walker occurred.

When the officers reached the car, they found Walker, his arm limp by his side, clutching his gun, safety released, cocked and a full magazine and an unfired round in the chamber. At trial the state attempt-

ed to prove that Walker drew his weapon after he was shot. Celaya testified that, after snatching the car keys, he saw Walker pull his gun and heard a clicking sound. Only then, claims Celaya, did he draw his own gun and shoot Walker in self-defense. Celaya then ran to his own car where he was apprehended.

On appeal Celaya asserts seven issues:
1. Did the trial court err in rejecting appellant's lesser-included theft instruction?
2. Did the trial court err in rejecting appellant's self-defense instructions?
3. Did the trial court err in rejecting appellant's requested instructions on the defense of apparent authority?
4. Did the trial court err in rejecting appellant's requested instructions on the lesser-included offenses for homicide?
5. Did the trial court err in denying appellant's motion to dismiss for failure by the state to comply with disclosure of requested exculpatory evidence?
6. Was evidence of appellant's prior bad acts improperly admitted?
7. Did the giving of the state's "flight" instruction constitute an unconstitutional comment on the evidence?

## I. INSTRUCTION ON THEFT

### A. Is Theft a Lesser-Included Offense of Robbery?

The jury convicted the defendant of armed robbery and first degree murder under the felony-murder statute. Celaya argues that he was at most guilty of theft, not robbery, and that the trial court erred by refusing to charge the jury on the crime of theft. The appellant objected at trial and sufficiently preserved the record.

 Rule 23.3, Rules of Criminal Procedure, 17 A.R.S., requires that a lesser-included offense be submitted to the jury:

"Forms of verdicts shall be submitted to the jury for all offenses necessarily included in the offense charged, ..."

An instruction on a lesser-included offense is proper under Rule 23.3 if the crime is a lesser-included offense to the one charged and if the evidence otherwise supports the giving of the instruction. *State v. Dugan*, 125 Ariz. 194, 195, 608 P.2d 771, 772 (1980).[1] To constitute a lesser-included offense, the offense must be composed solely of some but not all of the elements of the greater crime so that it is impossible to have committed the crime charged without having committed the lesser one. *State v. Malloy*, 131 Ariz. 125, 639 P.2d 315 (1981).

Whether theft[2] is a lesser-included offense of robbery[3] under the new criminal code is an issue of first impression to this court. It is well established that under the old criminal code theft was a lesser-included offense. *State v. Dugan, supra.* Recently, in *State v. Yarbrough,* 131 Ariz. 70, 73, 638 P.2d 737, 740 (App.1981), the Arizona Court of Appeals held that theft is a lesser-included offense of robbery under the new code.

1. *Dugan* states that the words "necessarily included" are not synonymous with the words "lesser included" and indicates that the latter refers to the relationship of two crimes because of a similarity in their legal elements, whereas the former refers to the relationship which exists because of the evidence in a given case. The two-part test required for an instruction to be proper under Rule 23.3 contemplates this distinction.

2. Theft is defined in the new code at A.R.S. § 13–1802(A)(1): "A person commits theft if, without lawful authority, such person knowingly: (1) Controls property of another with the intent to deprive him of such property; ..."

3. Arizona Revised Statutes § 13–1902(A) provides: "A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining the property." Arizona Revised Statutes § 13–1904 provides: "A. A person commits armed robbery if in the course of committing robbery as defined in § 13–1902, such person or his accomplice: 1. Is armed with a deadly weapon; or 2. Uses or threatens to use a deadly weapon or dangerous instrument ...."

The court reasoned that robbery as defined under the new code "necessarily includes an exercise of control over property as contemplated by the definition of theft in A.R.S. § 13–1802(A)(1)" because "one cannot take property without exercising control over it."

After reviewing the cases, we find the reasoning of *Yarbrough* persuasive and hold that theft as defined in A.R.S. § 13–1802(A)(1) is a lesser-included offense of robbery, A.R.S. § 13–1902. The state argues that theft is not a lesser-included offense because there is a *mens rea* for theft not present in robbery. However, A.R.S. § 13–202(B) prescribes that an appropriate mental state will be judicially read into statutes which "necessarily involve" a culpable mental state. It is clear that specific intent is an element of robbery. *State v. Broadfoot*, 115 Ariz. 537, 566 P.2d 685 (1977).

B. *Does the Evidence Support the Giving of a Theft Instruction?*

We now consider whether on the evidence introduced at trial the jury could rationally find that the state failed to prove an element of the greater offense. That element must be required to convict of the greater, but not of the lesser offense, it must necessarily distinguish the greater from the lesser, *State v. Dugan, supra,* 125 Ariz. at 195, 608 P.2d at 773, and it must be in dispute. *State v. Yarbrough, supra,* 131 Ariz. at 73, 638 P.2d at 740. If the jury could rationally find that the state failed to prove that the taking of property was accomplished by force, but did in fact prove all the other elements, the jury could return a guilty verdict for theft.

Appellant and the state present two conflicting versions of the shooting. According to Celaya, the victim voluntarily gave the money to the appellant who carried the money bag to his own vehicle where he placed it on the front seat prior to returning to the victim's car. Statements by a witness corroborate this contention.

The state argues that under no version of the facts could the jury have found that appellant did not employ force in order to obtain or retain control of Walker's money. California, cited as authority by the state, has adopted the minority rule that any force used prior to the escape of a robber to a place of temporary safety elevates the crime from theft to robbery. *People v. Anderson,* 64 Cal.2d 633, 51 Cal. Rptr. 238, 414 P.2d 366 (1966). This is not the law in Arizona. Arizona Revised Statutes § 13–1902 requires that the element of force be found to have been used to either take the property or to resist the retaking of the property. However, robbery is not committed when the thief has gained peaceable possession of the property and uses no violence except to resist arrest or effect his escape. *See Bauer v. State of Arizona,* 45 Ariz. 358, 43 P.2d 203 (1935).

*State v. Rodriquez,* 125 Ariz. 319, 320, 609 P.2d 589, 590 (App.1980) cited by the state, explains a crucial concept regarding the taking of property by force. The case involves a drug transaction where one of the parties was an undercover narcotics agent. The agent gave the defendant $83,-000 so that the defendant could count it as a preface to the drug transaction. After counting it, the defendant threatened the agent with a gun in order to keep the money in his possession. In response to the defendant's appeal that since he took the money without the use of force his conduct was theft and not robbery, the court noted there is a distinction between possession and custody. Although the defendant had custody of the money, the narcotics agent did not relinquish possession or control of the money until he felt he was going to be shot. Since control (as contrasted with custody) of the money was obtained by force, a robbery occurred.

If the jury believed Celaya's version of the facts, they could rationally find that he gained control of Walker's money without threat of force and that the taking of the money was complete when Celaya put the bag in his own car. The state attempted to argue in closing at trial that, even if there

was no robbery of the money, at least there was a robbery of the car keys. Although the state does not address this in its appellate brief, we mention it here for purposes of remand. Again we find that the jury could rationally believe that Celaya snatched the car keys without force and that the resulting homicide of Walker occurred after the taking of the car keys was complete. Since the evidence before the jury would have supported a conviction of theft and an acquittal of robbery, Celaya was entitled to the requested lesser-included instruction.

### C. *Was the Defendant Prejudiced by the Failure to Give the Theft Instruction?*

■ The state argues that the appellant was not prejudiced by the failure to instruct the jury on theft since the court did instruct the jury that: "If you find that the defendant committed a theft rather than a robbery, then you must find him not guilty of both murder and robbery," and defined theft for them. The United States Supreme Court has stated that the jury's option of refusing to return any verdict at all, thus causing a mistrial, is not an adequate substitute for proper instructions on lesser-included offenses. The option of convicting on a lesser-included offense affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal and ensures the defendant the full benefit of the reasonable-doubt standard. *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Where a defense theory is reasonably supported by the evidence, it is reversible error not to give it, and the court should have submitted forms of verdict covering theft. *State v. Govorko*, 23 Ariz.App. 380, 533 P.2d 688 (1975).

We hold that the appellant was prejudiced by the trial court's failure to charge the jury on theft. We reverse appellant's robbery conviction. Because appellant's first degree murder conviction under A.R.S. § 13–1105(A)(2), felony-murder, was predicated on appellant's having committed robbery, we also reverse the murder conviction.

## II. INSTRUCTIONS ON SELF-DEFENSE

■ The trial court rejected appellant's requested instructions on self-defense stating that self-defense is not an available plea to one charged under the felony-murder statute. Celaya argues that the failure to give the instructions violated his fifth-, sixth-, eighth-, and fourteenth-amendment rights. His first contention is that the preclusion of the plea of self-defense establishes a rule of law whereby a police officer may commit murder upon a person involved in a felony. This, Celaya asserts, denies him due process of law. We find no merit to this argument for several reasons.

It is appellant's position that Walker drew his weapon and unsuccessfully tried to fire it prior to any suggestion of physical force by Celaya. Celaya's defense is that Walker, a police officer, was attempting to arrest him but exceeded the amount of physical force allowed by law by not announcing his authority and purpose. Celaya argues that he was therefore justified in protecting himself under A.R.S. § 13–404(B)(2).

Appellant's reading of the statute is incorrect. Arizona Revised Statutes § 13–404(B)(2) justifies one's use of force to resist an arrest "that the person knows or should know is being made by a peace officer ..." if that officer is using force in excess of that allowed by law. By his own testimony, Celaya did not know Walker was a peace officer. Whether Walker exceeded the amount of physical force necessary to effect an arrest is not a relevant subject of inquiry.

■ The general rule in homicide cases is that the plea of self-defense is not available to one who is at fault in provoking the difficulty that resulted in homicide. *State v. Moore*, 112 Ariz. 271, 540 P.2d 1252 (1975). Where it is uncontroverted that the accused was at fault in provoking the difficulty which necessitated the defensive use of force, the court should refuse to instruct on self-defense. *State v. Williams*, 132

Ariz. 153, 156, 644 P.2d 889, 892 (1982). The evidence in this case conflicts as to who provoked the violence. Appellant contends that Walker was the aggressor, while the state claims that Walker reflexively drew his gun after he was shot. Since evidence was presented to corroborate both stories, the issue of provocation is not uncontroverted.

The inferences and conclusions to be drawn from the respective versions of the facts are intricately woven together. At issue is not whether a homicide occurred during the commission of a felony, but rather, whether a robbery occurred so as to invoke the felony-murder rule. Having decided above that Celaya is entitled to have his version of the facts presented to the jury, *i.e.,* that he committed theft not robbery, we must also hold that the jury be instructed on self-defense in connection with the robbery charge.

However, the facts compel us to hold that the jury not be instructed on self-defense in connection with the felony-murder charge. If the jury finds that a robbery was committed, they must then decide whether Walker was killed during the commission of or flight from the felony so as to trigger the felony-murder rule. *State v. Jimenez,* 130 Ariz. 138, 634 P.2d 950 (1981). Because the killing of Walker is the element of force which here distinguishes between robbery and theft, the evidence will not support a plea of self-defense. "When the felony is so entwined with the murder that it is part of that murder we will not hold a stopwatch on the events or artificially break down the actions of the defendant into separate components in order to avoid the clear intent of the legislature in enacting the felony-murder rule." *State v. Richmond,* 114 Ariz. 186, 190, 560 P.2d 41, 45 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977).

"[A] person engaged in the commission of the crime of robbery which calls into action defensive forces against him the activity of which results in the death of a human being is guilty of murder in the first degree." *State v. Howes,* 109 Ariz. 255,

257, 508 P.2d 331, 333 (1973), quoting from *State v. Hitchcock,* 87 Ariz. 277, 350 P.2d 681 (1960). In a felony-murder prosecution, a person who is found by the jury to be engaged in an attempted robbery must be considered the initial aggressor; it is immaterial whether the victim of the robbery or the defendant fired first. *People v. Guraj,* 105 Misc.2d 176, 431 N.Y.S.2d 925 (1980). "[T]he accused cannot set up in his own defense a necessity which he brought upon himself." *State v. Jones,* 95 Ariz. 4, 8, 385 P.2d 1019, 1021 (1963).

Appellant incorrectly asserts that *State v. Clayton,* 109 Ariz. 587, 514 P.2d 720 (1973), entitles one who provokes an incident, charged with felony-murder, to self-defense instructions. The defense theory in *Clayton* was that the defendant had completed the crime of burglary and was attempting to surrender when the victim shot at him. Because the victim in *Clayton* was not killed during the defendant's commission of or flight from the felony, the defendant's act of homicide was arguably outside the scope of the felony-murder rule and instructions on self-defense were properly submitted to the jury.

Celaya's defense does not fall under the *Clayton* rule; he does not argue that the felony was completed before Walker was killed. Celaya consistently argued that no felony occurred but rather, a theft. We hold that on remand, instructions on self-defense should not be given to the jury in connection with the felony-murder charge. This resolution, in light of the fact that Celaya may argue his version of the facts to the jury, guarantees due process to the appellant.

Celaya next contends that the "strained application" of the felony-murder rule to this case violates the eighth amendment because the punishment disproportionately exceeds that which is retributively justified. It is clear from the above discussion that, if the jury finds that a robbery occurred, the application of the felony-murder rule will not be "strained." This is precisely the type of case the legislature

intended the statute to govern. *State v. Richmond, supra.*

Finally, Celaya asserts that any substantive rule of law which provides for a conclusive presumption of *mens rea* is subject to constitutional scrutiny. Many courts have entertained the constitutionality of the felony-murder doctrine. We quote from *State v. Goodseal,* 220 Kan. 487, 553 P.2d 279, 286 (1976), wherein they said: "The felony-murder rule, designed as it is to protect human life, represents sound public policy, is reasonably related to the end sought to be accomplished and is not constitutionally impermissible."

## III. INSTRUCTIONS ON THE DEFENSE OF APPARENT AUTHORITY

■ At trial, appellant introduced much evidence pertaining to his past informant activities with various law-enforcement agencies in support of his theory that he had the "apparent authority" to devise a scheme to rid himself of the threat of the Mexican drug dealer. At the end of the trial, the court rejected appellant's proposed instructions setting forth this theory; appellant now claims error in that rejection.

Appellant cites *United States v. Barker,* 546 F.2d 940 (D.C.Cir.1976), in support of his "apparent authority" defense. *Barker,* a case which arose out of the Watergate scandal, carved out a very limited exception to the general rule that a mistake of law will not excuse the commission of an offense. The *Barker* defendants successfully argued on appeal that they be allowed a defense based upon their good faith, reasonable reliance on E. Howard Hunt's apparent authority to break into a room and steal copies of medical records.

We have held that it is no defense that a person did not know his act was unlawful or that he believed it to be lawful. *State v. Morse,* 127 Ariz. 25, 617 P.2d 1141 (1980). A.R.S. § 13–204(B). The facts of this case do not compel us to create an exception to this rule. Unlike Barker, Celaya was not ordered by anyone to meet Walker at the Tucson airport to take his money, nor does

he so contend. Celaya admits he devised the scheme on his own. His personal belief that it was proper to bend the law when engaged in narcotics enforcement is not analogous to *Barker* wherein that court recognized that "in certain situations there is an overriding societal interest in having individuals rely on the authoritative pronouncements of officials whose decisions we wish to see respected." *United States v. Barker, supra,* 546 F.2d at 947.

## IV. INSTRUCTIONS ON THE LESSER–INCLUDED HOMICIDE OFFENSES

■ Appellant contends that the trial court's refusal to instruct the jury on the lesser-included offenses for homicide was error and that it violated his due process rights under *Beck v. Alabama, supra.* First, we note that there is no lesser-included homicide offense of the crime of felony-murder and failure to instruct thereon does not constitute error. *State v. Arias,* 131 Ariz. 441, 641 P.2d 1285 (1982).

■ In a potential death penalty case, the court has a duty to instruct on every degree of homicide embraced in the information and supported by the evidence. *State v. Dalglish,* 131 Ariz. 133, 639 P.2d 323 (1982). But where the sole defense is self-defense so that the evidence requires either conviction or acquittal, any instruction on any other grade would be impermissible. *State v. Jones,* 109 Ariz. 80, 505 P.2d 251 (1973).

The only theory offered by the appellant and supported by the evidence is that Celaya killed Walker in self-defense. The trial court did not err in refusing to instruct the jury on the lesser-included homicide offenses.

## V. DISCLOSURE OF EVIDENCE

■ Appellant claims the state has failed to comply with *Brady* requirements for disclosure of exculpatory evidence crucial to their defense of apparent authority. While admitting that he does not know if the evidence exists, appellant asserts that if it does exist, it is extremely important to

the defenses advanced. We have reviewed the record and find nothing to indicate that such *Brady* material exists; we cannot entertain an issue based upon a mere suspicion of the appellant. Furthermore, the issue is moot in light of our holding that the defense of apparent authority is inapplicable under Arizona law.

## VI. ADMISSION OF EVIDENCE OF PRIOR BAD ACTS

Appellant objects to two instances where evidence relating to prior bad acts was admitted. Prior to trial, Celaya made a motion to preclude the introduction of prior bad acts. The court accordingly ordered the state not to introduce such evidence without first raising its admissibility and method of proof with the court. Contrary to this order, one of the state's witnesses told the jury that Celaya had once been a narcotics violator. Celaya immediately objected and moved for mistrial.

Testimony regarding prior offenses may come into evidence only in certain circumstances. 17A A.R.S., Arizona Rules of Evidence, rule 404(b). The testimony here is not relevant under rule 404(b), *State v. Holsinger,* 124 Ariz. 18, 601 P.2d 1054 (1979), nor under rule 404(a)(1), to impeach the defendant's character. While we certainly do not condone a direct violation of a court order, we hold that Celaya was not prejudiced by this testimony. Appellant himself freely testified about his involvement in the transportation and distribution of marijuana in 1973.

During the cross-examination of a drug-enforcement agent, the state elicited the agent's observation that drug informants were "crooks" and "criminal elements." Appellant moved for a mistrial on the ground that the prosecutor insinuated by his questions that Celaya was a crook. Appellant now submits reversible error was committed.

The record does not indicate for what purpose the prosecutor sought this testimony. A mistrial or reversal is warranted only if it appears reasonably possible that error might have materially influenced the jury. *State v. Grier,* 129 Ariz. 279, 630 P.2d 575 (App.1981).

The state contends that the term "crook" was used throughout the trial to refer to an individual suspected of criminal activity and that the prosecutor was referring to informants in general. A review of the dialogue indicates that any reference that Celaya was a crook was tenuous at most and harmless in light of appellant's own testimony concerning his past participation in criminal activity.

## VII. FLIGHT INSTRUCTION

Appellant objects to the following jury instruction on the ground that it constitutes unconstitutional comment on the evidence in violation of the Arizona Constitution, article VI, section 27:

> "Running away or hiding after a crime has been committed does not itself prove guilt. You may consider any evidence of the defendant's running away or hiding together with all the other evidence."

After Walker was shot, appellant ran to his car where several agents converged on him before he could drive away. Appellant testified at trial that he had intended to drive to a nearby DEA office to summon medical aid for the victim. Appellant argues that the jury instruction presumes he did in fact flee from the scene of the crime.

We have held that such a jury instruction on flight does not constitute comment on the evidence. *State v. Hatton,* 116 Ariz. 142, 568 P.2d 1040 (1977). Merely leaving the scene of a crime is not evidence of flight; before flight instructions can be given, there must be evidence of open flight, as upon pursuit, or concealment, and the manner of leaving the scene must reveal a consciousness of guilt. *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). Running, rather than walking from the scene of a crime may provide evidence of a guilty conscience. *State v. Lujan,* 124 Ariz. 365, 604 P.2d 629 (1979).

There is sufficient evidence of open flight upon pursuit by Celaya from the scene of the homicide to warrant the giving of the flight instruction. The instruction is sufficiently conditional to allow the jury to decide whether appellant's precipitous exist from the area was in search of medical aid or whether it was an attempt to escape. Furthermore, the jury was instructed to disregard any instructions which they found not to apply after they had determined the facts. We hold the trial court did not err in giving the flight instruction.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035(B) and find none.

The judgment of conviction is reversed and the case is remanded.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.