NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ANDREW TYRAYE MOERING, *Appellant*.

No. 1 CA-CR 18-0822
FILED 5-12-2020

Appeal from the Superior Court in Maricopa County
No. CR2014-133418-001
The Honorable Kathleen H. Mead, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Dawnese Hustad
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**M O R S E,** Judge:

¶1 Andrew Tyraye Moering appeals his convictions and sentences for first-degree murder, aggravated assault, and two counts of attempted armed robbery. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 We view the facts in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Moering. *See State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013). In June 2014, Moering shot and killed D.J. during an attempted armed robbery. He also shot A.D., D.J.'s stepfather, in the left elbow and left hip. Moering set up the robbery under the pretense of a marijuana purchase.

¶3 Moering and D.J. were introduced earlier in the day through mutual acquaintances via text message. Moering agreed to buy a quarter-pound of marijuana from D.J. They eventually agreed to meet at a local park to consummate the deal. An accomplice, R.V., drove Moering and co-defendant Mitchell Binion, and A.D. drove D.J. to the meeting. D.J. brought a gun because he was concerned about his safety.

¶4 At the park, Moering and Binion walked from R.V.'s car to the victims' car, which was near a basketball court. A teenager, P.B., witnessed the events from the court. Feigning that the package was underweight, Moering told A.D. he wanted to retrieve a scale from his car. Moering and Binion returned to R.V.'s vehicle. R.V. told Moering to "go get it" and "draw down," which Binion understood to mean "pull out his gun." Moering and Binion returned to the victims' car. A.D. was standing outside with the marijuana and D.J. was in the front passenger seat.

¶5 Moering pulled out his gun, "racked the slide," and pointed it at A.D., ordering him to "[g]ive me the [marijuana]." Moering told Binion to grab the marijuana, but Binion saw that D.J. had a gun pointed at him from inside the car. Binion yelled "[h]e has a gun" and fled.

¶6          D.J. fired first, and Moering returned fire.  Moering shot D.J. in the shoulder, collapsing his lung.  He died at the hospital.  Moering also wounded A.D.

¶7          The State charged Moering with first-degree murder, a class one dangerous felony (Count 1); aggravated assault, a class three dangerous felony (Count 2); and two counts of attempted armed robbery, class three dangerous felonies (Counts 3-4).  After a fourteen-day trial, the jury convicted Moering as charged.  The superior court sentenced Moering to the following terms of imprisonment: Count 1, life with the possibility of release after 25 years; Count 2, 11.25 years served consecutively to Count 1; Count 3, 11.25 years served concurrently with Count 1; and Count 4, 11.25 years served consecutively to Count 1 and concurrently with Count 2. Moering timely appealed, and we have jurisdiction under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.        Lesser-Included Offense Instruction.

¶8          Moering argues that the superior court erred by denying his request for a jury instruction on attempted theft as a lesser-included offense to attempted armed robbery.  The superior court found "no evidence" to support giving the instruction.  We review the denial of a requested jury instruction for abuse of discretion.  *State v. Wall*, 212 Ariz. 1, 3, ¶ 12 (2006). We defer to the superior court's assessment of the evidence in deciding whether to provide a requested instruction.  *Id.* at 5, ¶ 23.

¶9          A jury instruction on a lesser-included offense is required when the evidence is "such that a jury could reasonably find that only the elements of a lesser offense have been proved[.]" *Id.* at 3, ¶ 14. "[A]n offense is 'necessarily included,' and so requires that a jury instruction be given, only when it is lesser included [and] the evidence is sufficient to support giving the instruction." *Id.* "[A]ttempted theft is a lesser-included offense of attempted robbery . . . ." *Id.* at ¶ 15.

¶10         "A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property." A.R.S. § 13-1902(A).  To prove armed robbery, the State must show that when committing a robbery, the person used or threatened to use a deadly weapon.  A.R.S. § 13-1904(A).  "The

essential elements of an attempted robbery are (1) intent to commit robbery and (2) an overt act towards that commission." *State v. Clark*, 143 Ariz. 332, 334 (App. 1984); *see also* A.R.S. § 13-1001(A).

¶11        "A person commits theft if, without lawful authority, the person knowingly [c]ontrols property of another with the intent to deprive the other person of such property[.]"  A.R.S. § 13-1802(A)(1).  "The main difference between the crimes of theft and robbery lies in the use or threat of force . . . ."  *State v. Tramble*, 144 Ariz. 48, 52 (1985).

¶12        Binion entered a testimonial plea agreement with the State and testified at trial.  Binion repeatedly stated that Moering drew his gun, pointed it at A.D., and demanded the marijuana when they returned after purportedly retrieving a scale.  Binion said he did not see D.J.'s weapon until after Moering pointed his gun at A.D. and ordered him to hand over the marijuana.  He also "never saw the actual moment" when D.J. drew his gun.

¶13        At one point in redirect examination, however, Binion stated that at the time of the shooting, he "believed that [D.J.] had his gun out first and he was the one that shot first when I said: He has a gun."  Moering suggests that Binion's statement about his "belief" at the time sufficiently supported an attempted theft instruction.  But right after this statement, Binion again confirmed that he saw Moering pull his firearm on A.D. and order him to surrender the marijuana before he saw D.J.'s gun.  Binion repeated that after Moering pointed his weapon at A.D., Binion then "saw [D.J.] pulling his gun up" and yelled that D.J. had a gun.  Binion testified that he did not think Moering was aware that D.J. had a gun until Binion yelled.

¶14        We disagree with Moering's characterization of the testimony.  Binion framed his inconsistent statement as a "belief" or speculation.  *See State v. Contreras*, 107 Ariz. 68, 70 (1971) (holding that "speculation alone, without corroboration, is not sufficient" to receive lesser-included instruction).  Binion did not see or know when D.J. drew his gun.  He also immediately clarified that he observed Moering draw his gun first and demand the marijuana before he saw D.J. with a gun.

¶15        Furthermore, P.B. corroborated Binion's account.  P.B. was standing about thirty feet from the scene.  He saw the cars arrive and the parties meet.  He watched Moering and Binion leave and then return to the victims' car.  He saw Moering pull a semiautomatic pistol out, "rack the

4

slide," point it at A.D., and yell for A.D. to "[h]and it over." He saw D.J. then "pull[] out a weapon of his own" and fire first.

¶16    Likewise, A.D. confirmed that Moering pointed his gun at A.D., yelling, "give me the weed." A.D. yelled "gun" as Binion grabbed for the marijuana before shots rang out.

¶17    Consequently, the uncontroverted testimony of all three witnesses established that Moering drew his gun; pointed it at A.D.; racked the weapon; demanded the marijuana from A.D.; and told Binion to grab it—all before D.J. drew his weapon. Moering was not aware that D.J. had a gun before Binion yelled. And although D.J. fired first, the shooting sequence is inconsequential to determining whether Moering's initial acts of pointing his gun and demanding the drugs could reasonably qualify as theft. *See State v. Celaya*, 135 Ariz. 248, 254 (1983) ("[A] person . . . engaged in attempted robbery must be considered the initial aggressor; it is immaterial whether the victim of the robbery or the defendant fired first.").

¶18    The evidence presented at trial was not "sufficient to support giving the instruction." *Wall*, 212 Ariz. at 3, ¶ 14. Because no evidence controverted Moering's threatened use of force, he was not entitled to a theft instruction. *See State v. Jackson,* 186 Ariz. 20, 27 (1996) ("To determine whether there is sufficient evidence [for a] lesser-included offense instruction, the test is whether the jury could rationally fail to find the distinguishing element of the greater offense.") (quotation omitted).

¶19    Moering offers two counterarguments. He suggests that "[he] did not make any threat." But all three witnesses testified that Moering pointed his gun at A.D. to coerce surrender of the marijuana, and this evidence satisfies the threat element. *See State v. Garza Rodriguez*, 164 Ariz. 107, 112 (1990) ("[A] weapon . . . must actually be present and used in a threatening manner to satisfy the 'threatens to use' element of the armed robbery statute.").

¶20    Moering also argues that the attempted theft instruction was required because Binion testified that the initial plan was a "snatch and grab" theft without the use of a gun. But Binion also testified that Moering had planned a "lick," which could refer to armed robbery. Moreover, Binion's understanding of Moering's intentions is not dispositive and ignores other evidence, including witness observations and R.V.'s direction for Moering to "go get it" and "draw down" if necessary. Moering and R.V. also exchanged text messages that suggest Binion may not have known their plan.

¶21 Moering's reliance on *State v. Celaya* is unavailing. In *Celaya*, the defendant shot an undercover agent during a drug deal in which the defendant planned to steal the buyer's money by giving him a bag of clothes and shoes in the exchange. 135 Ariz. at 250-51. Surveillance agents watched the undercover agent give Celaya the money and saw Celaya put it in his car. *Id.* The shooting occurred after Celaya returned to the agent's car with the "drugs" and then snatched the agent's car keys to flee. *Id.* Our supreme court determined that "robbery is not committed when the thief has gained peaceable possession of the property and uses no violence except to resist arrest or effect his escape." *Id.* at 252. Because the evidence adequately established that the agent may have voluntarily given Celaya the money without force or threat, Celaya was entitled to a lesser-included theft instruction for armed robbery. *Id.* at 252-53. Moering's situation is distinguishable. No reasonable view of the evidence presented at Moering's trial could lead a jury to find he peaceably attempted to obtain the marijuana.

¶22 Moering's reliance on *State v. Dugan*, 125 Ariz. 194 (1980), is similarly unpersuasive. In *Dugan*, the defendant's testimony conflicted enough with the State's version of the facts for a robbery charge that the jury could reasonably conclude no force or fear was present. *Id.* at 195-96. Our supreme court held that a defendant is entitled to a lesser-included theft instruction for a robbery charge "if the jury could rationally find that the state failed to prove the distinguishing element of fear, but did in fact prove all other elements[.]" *Id.* at 196. The conflicting versions of facts in *Dugan* are not present here. The evidence clearly established Moering's threatening use of a gun and proved the "distinguishing element." *Id.*; *see also State v. Sprang*, 227 Ariz. 10, 12, ¶ 7 (App. 2011).

¶23 Accordingly, the superior court properly exercised its discretion to deny the attempted theft instruction as a lesser-included offense. Furthermore, the superior court provided the jury with an instruction for the lesser-included offense of attempted robbery, which the jury rejected. The jury's rejection of the lesser-included offense made any presumed error harmless. *See State v. Amaya-Ruiz*, 166 Ariz. 152, 174 (1990) ("[W]hen a defendant is convicted of first degree murder rather than second degree murder, any error as to instructions on lesser included offenses is necessarily harmless, because the jury has necessarily rejected all lesser-included crimes."); *see also State v. White*, 144 Ariz. 245, 247 (1985) ("[B]y finding defendant guilty of the highest offense, to the exclusion of the immediately lesser-included offense . . . the jury necessarily rejected all other lesser-included offenses.").

## II.    Self-Defense Instruction.

**¶24**        Moering contends that the superior court erred by instructing the jury that it could consider his self-defense claim for the aggravated assault charge but not for the attempted armed robbery charges.  "We review a trial court's refusal to instruct on self-defense for an abuse of discretion, viewing the evidence in the light most favorable to [Moering]." *State v. Carson*, 243 Ariz. 463, 467, ¶ 17 (2018).  But we will not reverse the court's refusal unless Moering suffered prejudice as a result.  *State v. Snodgrass*, 121 Ariz. 409, 411 (App. 1979).

**¶25**        Generally, a defendant is "justified in threatening or using physical force against another when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force." A.R.S. § 13-404(A).  "A defendant is entitled to a self-defense instruction if the record contains the 'slightest evidence' that [the defendant] acted in self defense." *State v. King*, 225 Ariz. 87, 90, ¶ 14 (2010) (citation omitted).  "The 'slightest evidence' is a low standard that has been defined in the self-defense context as 'a hostile demonstration, which may be reasonably regarded as placing the accused apparently in imminent danger of losing her life or sustaining great bodily harm.'" *Id.* at ¶ 15 (citation omitted).  "The privilege of self-defense is not available to one who is at fault in provoking an encounter or difficulty that results in a homicide." *State v. Lujan*, 136 Ariz. 102, 104 (1983).

**¶26**        D.J. shot first.  Because the evidence supported a finding that Moering may have responded in self-defense to D.J.'s initial shot, the superior court properly determined he was entitled to a self-defense instruction for the aggravated assault charge. *Id.* at 90, ¶ 14; *see* A.R.S. § 13-404(A).  The jury rejected Moering's defense.

**¶27**        But Moering drew his weapon first.  The uncontroverted evidence established that Moering pulled and racked his gun to demand the marijuana. *See King*, 225 Ariz. at 90-91, ¶¶ 14-15, 17.  Even in the light most favorable to Moering, Binion's statement about his momentary, clarified "belief" does not independently provide the necessary "slightest evidence." *See State v. Bojorquez*, 138 Ariz. 495, 497-98 (1984) (stating "where a requested self-defense instruction is not warranted by the evidence in the case, the trial court is under no obligation to give it.").

**¶28**        Moering also failed to argue that he suffered prejudice.  The jury was instructed and expressly rejected self-defense on the aggravated

assault count. Moering offers no conceivable scenario, nor can we imagine one, in which self-defense could justify the attempted armed robbery, but not the aggravated assault. Thus, by rejecting self-defense as to the aggravated assault count, the jury implicitly rejected any self-defense claim for the armed robbery charges and any hypothetical error was harmless. *See State v. Trostle*, 191 Ariz. 4, 13 (1997) (prejudice must appear affirmatively from the record); *see also United States v. Weddell*, 567 F.2d 767, 770 (8th Cir. 1977) (finding the failure to instruct on self-defense for one murder count was harmless where the jury rejected the defendant's self-defense claim on another murder count arising from the same shooting).

**¶29** The superior court therefore acted within its discretion by limiting the jury's consideration of self-defense.

## CONCLUSION

**¶30** For the foregoing reasons, we affirm Moering's convictions and sentences.

