NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

MARTIN QUEZADA ESTEVEZ, *Petitioner*.

No. 1 CA-CR 22-0483 PRPC
FILED 4-25-2023

Petition for Review from the Superior Court in Yuma County
No. S1400CR200801584
The Honorable Brandon S. Kinsey, Judge

**REVIEW GRANTED/RELIEF GRANTED**

COUNSEL

Yuma County Attorney's Office, Yuma
By Jon R. Smith
*Counsel for Respondent*

Yuma County Legal Defender's Office, Yuma
By Zachary John Dumyahn
*Counsel for Petitioner*

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Michael J. Brown and Judge Michael S. Catlett joined.

**M c M U R D I E**, Judge:

¶1        Martin Quezada Estevez petitions this court to review the summary dismissal of his post-conviction relief ("PCR") petition filed under Arizona Rule of Criminal Procedure 32.1. We grant review and relief.

### FACTS AND PROCEDURAL BACKGROUND

¶2        In 2004, Estevez lived with his girlfriend (Camila),[1] his two daughters, and Camila's daughter. One afternoon, while the children were with a sitter, Estevez was at his neighbor's house when he saw Camila return from work. Estevez went home, took Camila's phone, and returned to the neighbor's house. Camila followed him and threatened to call the police if Estevez did not give her back the phone. She then took the phone and returned home. Estevez followed, and the two argued. Meanwhile, the daughters were with a sitter dropping off the eldest girl at a soccer game.

¶3        When the sitter and two of the girls returned, Estevez met them at the door. He instructed them to go to a neighbor's house, but one of the girls slipped past Estevez, proceeded to the patio, and saw Camila lying on the ground with blood on her mouth. Estevez explained to his daughter that Camila must have hurt herself in the bathroom. He returned his daughter to the sitter, who led the girls to the neighbor's house. The sitter and the girls later left to pick up the eldest daughter from her game.

¶4        When the daughters returned, the eldest searched for Camila but could not find her. She found Camila's wallet and keys, however. She telephoned Estevez, who claimed he was out buying beer and did not know Camila's whereabouts. After about 45 minutes, she called again. Estevez said he was almost home but did not return for a half hour. Once Estevez arrived, she told him that if he did not call the police, she would. So, Estevez called the police.

---

[1]        We use a pseudonym to protect the victim's identity.

¶5            Officers arrived, and Estevez admitted to arguing with Camila. Police then deployed a cadaver dog, which alerted on Estevez's truck. When the police interviewed Estevez again, he acknowledged that Camila did not hurt herself in the bathroom and that one of the girls saw her lying on the patio. Still, he denied having anything to do with her disappearance.

¶6            No one saw Camila again until her body was found on a farm more than a year later, dressed in the same clothes the girls saw her wearing the day she disappeared. Police obtained cell site location information showing Estevez's phone was used near the farm when Camila disappeared. In 2008, a grand jury indicted Estevez for second-degree murder, and the police arrested him.[2] The indictment did not differentiate between the different methods of committing second-degree murder. *See* A.R.S. § 13-1104(A)(1)–(3).

¶7            The case proceeded to a jury trial. The medical examiner testified that the bodily remains were "almost completely skeletonized." When he examined the bones, the examiner found no evidence of stabbing, gunshot wounds, or blunt force trauma. He also noted that some bones, including the hyoid bone, were missing. Without the hyoid bone, he could not determine whether there was trauma to the neck area. In sum, the examiner stated that he could not determine Camila's cause of death.

¶8            Before the closing arguments, Estevez requested that the court instruct the jury on the lesser-included offenses of manslaughter and negligent homicide. He argued that because the State advocated for reckless second-degree murder, the jury should also consider reckless manslaughter and negligent homicide as lesser-included offenses. The State replied that the court must provide a reckless manslaughter instruction only if the evidence supported it, and there was no such evidence in the case. The court denied the motion because "there was no evidence of any recklessness that was presented to the jury," and it declined to instruct on the lesser-included offenses.

¶9            At closing argument, the State theorized that "[Estevez] strangled [Camila] or choked her or suffocated her," noting that officers found no blood on the scene, no one reported a scream or gunshot, and the

---

2        The arrest did not occur until 2018, when Estevez returned to the United States from Mexico. The State extradited Estevez from California to begin the prosecution.

medical examiner found nothing remarkable about the skeleton. The State clarified, however, that cause of death is not an element of the crime, and the jury could convict Estevez without believing the asphyxiation theory.

**¶10**      The State also explained that second-degree murder requires the jury to find that Estevez intentionally, knowingly, or recklessly caused Camila's death. The defense countered that the State relied too heavily on speculation and guesswork and thus failed to prove its case beyond a reasonable doubt.

**¶11**      The jury found Estevez guilty. The court sentenced Estevez to an aggravated prison term of 22 years.

**¶12**      Estevez appealed. On appeal, he argued that the superior court lacked the authority to impose extradition costs, and the police unlawfully seized his cell phone records. He did not raise a jury-instruction issue. We affirmed his conviction and sentence. *State v. Estevez*, 1 CA-CR 19-0037, 2020 WL 734226 (App. Feb. 13, 2020) (mem. decision).

**¶13**      Estevez then petitioned for PCR. He raised several claims, including that appellate counsel was ineffective by failing to raise the claim that the court erred by refusing to give the lesser-included instructions. The court summarily denied the petition.

**¶14**      Estevez petitioned this court for review, and we have jurisdiction under A.R.S. § 13-4239(C) and Rule 32.16(a)(1).

## DISCUSSION

**¶15**      Estevez argues, among other things, that his appellate counsel was ineffective by failing to raise the jury-instruction issue. The superior court summarily dismissed the petition. Generally, we will affirm the superior court's resolution of a petition for PCR unless the court abused its discretion or legally erred. *State v. Evans*, 252 Ariz. 590, 594, ¶ 7 (App. 2022). But whether an attorney rendered ineffective assistance "is a mixed question of fact and law," with the superior court's legal conclusions subject to *de novo* review. *State v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017); *State v. Macias*, 249 Ariz. 335, 340, ¶ 16 (App. 2020).

**¶16**      We must determine whether Estevez presents a colorable claim of ineffective assistance. *State v. Bennett*, 213 Ariz. 562, 566, ¶ 17 (2006). A colorable claim alleges facts that, if true, would have probably changed the outcome. *State v. Amaral*, 239 Ariz. 217, 220, ¶¶ 10–11 (2016). To state a colorable ineffective-assistance-of-counsel claim, a defendant

must show that counsel performed below objectively reasonable standards and that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant is prejudiced if there is a reasonable probability that the outcome would have been different. *Id.* at 694.

¶17     "A strong presumption exists that appellate counsel provided effective assistance," as appellate counsel may reasonably raise some issues and reject others. *Bennett*, 213 Ariz. at 567, ¶ 22. Generally, "[a]ppellate counsel is not ineffective for selecting some issues and rejecting others." *Id.*; *Jones v. Barnes*, 463 U.S. 745, 752–53 (1983) ("There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. . . . A brief that raises every colorable issue runs the risk of burying good arguments."); *Macias*, 249 Ariz. at 341, ¶ 17. But "if counsel ignores issues that are clearly stronger than those selected for appeal, a defendant can overcome the presumption." *Bennett*, 213 Ariz. at 567, ¶ 22. Estevez argues that the court's refusal to instruct on the lesser-included offenses was the strongest appellate issue, and appellate counsel was ineffective by not raising it.

¶18     At the trial, the court instructed the jury on second-degree murder:

> The crime of second-degree murder requires proof of one of the following:
>
> 1. The defendant intentionally caused the death of another person; *or*
>
> 2. The defendant caused the death of another person by conduct which the defendant knew would cause death or serious physical injury; *or*
>
> 3. Under circumstances manifesting extreme indifference to human life, the defendant recklessly engaged in conduct that created a grave risk of death and thereby caused the death of another person. The risk must be such that disregarding it was a gross deviation from what a reasonable person in the defendant's situation would have done.

*See* A.R.S. § 13-1104. A defendant is entitled to a lesser-included instruction if the jury could find "(a) that the State failed to prove an element of the

greater offense and (b) that the evidence is sufficient to support a conviction on the lesser offense." *State v. Wall*, 212 Ariz. 1, 4, ¶ 18 (2006).

¶19 As relevant here, and as instructed by the superior court, a person commits second-degree murder if "[u]nder circumstances manifesting extreme indifference to human life, the person recklessly engages in conduct that creates a grave risk of death and thereby causes the death of another person." A.R.S. § 13-1104(A)(3). Similarly, a person commits manslaughter by "[r]ecklessly causing the death of another person." A.R.S. § 13-1103(A)(1). The distinction between the offenses is whether the person acted "under circumstances manifesting extreme indifference to human life . . . through conduct that created a grave risk of death." *State v. Valenzuela*, 194 Ariz. 404, 406–07, ¶ 11 (1999). If the evidence supports a finding that the defendant acted recklessly but without the additional distinguishing elements, the court must instruct on the lesser-included offense of reckless manslaughter. *Id.* at 407, ¶ 13.

¶20 At trial, the State presented little evidence about the circumstances surrounding Camila's death. During closing arguments, the prosecutor admitted, "We don't know how he killed her, and that's a fact." Before this court, the State concedes that "the evidence did not show how [Camila] died." On these facts, a jury could have found that the State failed to prove Estevez acted "under circumstances manifesting extreme indifference to human life . . . through conduct that created a grave risk of death." *See Valenzuela*, 194 Ariz. at 406–07, ¶ 11. This satisfies the first *Wall* prong.

¶21 To satisfy the second prong, Estevez must also show that "the evidence is sufficient to support a conviction on the lesser offense." *Wall*, 212 Ariz. at 4, ¶ 18. The State argues that the evidence here could not support a lesser conviction "[b]ecause Estevez presented an all or nothing defense." This argument is problematic for two reasons. First, Estevez chose not to put on evidence and only argued that the State failed to meet its burden of proof. He did *not* present an all-or-nothing defense, such as an alibi or mistaken identity. *Cf. Wall*, 212 Ariz. at 6, ¶ 29. Second, even if he had, "the evidence in the record can be sufficient to require a lesser-included offense instruction even when the defendant employs an all-or-nothing defense." *Id.* at ¶ 30.

¶22 "[E]vidence to support a conviction exists when 'reasonable persons could accept [it] as adequate and sufficient to support a conclusion of [a] defendant's guilt beyond a reasonable doubt.'" *State v. Burns*, 237 Ariz. 1, 21, ¶ 72 (2015) (quoting *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011)).

In other words, if a jury could reasonably infer from the evidence that a defendant committed a lesser-included offense, the defendant is entitled to that instruction. *See Valenzuela*, 194 Ariz. at 407, ¶ 13; *see also State v. Harvill*, 106 Ariz. 386, 391 (1970) (A jury may consider direct and circumstantial evidence equally.); *State v. Riley*, 12 Ariz. App. 336, 337 (1970) ("Circumstantial evidence is the proof of the existence of some fact from which fact the existence of the thing in issue may be legally and logically inferred.").

¶23 At the trial, the State advocated for second-degree murder under three mental states, including recklessness. In this court, the State maintains that "the evidence proved second degree murder, even if committed recklessly." But the issue here is not whether the evidence was sufficient to support the convicted offense. Instead, the issue is whether the evidence was "sufficient to support a conviction on the *lesser offense*." *Wall*, 212 Ariz. at 4, ¶ 18 (emphasis added). Here, the State contends that the prosecutor "properly argued that the jury could find guilt if Estevez . . . recklessly caused the death of [Camila]." This assertion cuts against denying the lesser-included instruction because it implies evidence supports a reckless manslaughter conviction. *Cf.* A.R.S. § 13-1103(A)(1) (A person commits manslaughter by "[r]ecklessly causing the death of another person.").

¶24 More importantly, we agree with the State that the jury could have concluded that the crime was committed recklessly. Because of the nature of the evidence presented and the State's concession that it did not know what happened in the moments preceding Camila's death, the jury reasonably could have made various inferences, especially about Estevez's mental state. The jury reasonably could have inferred that Estevez recklessly killed Camila, either with or without the elements distinguishing murder from manslaughter. *See Valenzuela*, 194 Ariz. at 407, ¶¶ 12–13. Similarly, the jury reasonably could have concluded that Estevez killed Camila with criminal negligence. *See* A.R.S. § 13-1102(A) ("A person commits negligent homicide if with criminal negligence the person causes the death of another person."); A.R.S. § 13-105(10)(d) (Criminal negligence occurs when "a person fails to perceive a substantial and unjustifiable risk . . . . constitut[ing] a gross deviation from the standard of care that a reasonable person would observe.") When evidence permits conflicting inferences, it supports giving the lesser-included instruction. *See State v. Miranda*, 200 Ariz. 67, 69, ¶ 7 (2001).

¶25 The superior court declined to instruct on reckless manslaughter because it found "no evidence of any recklessness that was

presented to the jury." Yet the court instructed the jury on the definition of "recklessly" and reckless second-degree murder. If there were "no evidence of any recklessness," it would have been error to instruct on reckless second-degree murder. *See State v. Sprang*, 227 Ariz. 10, 14, ¶ 14 (App. 2011) (Superior court committed an "error of law and, therefore, abused its discretion because no evidence warranted an instruction."). If there was evidence supporting a reckless second-degree murder instruction, that same evidence supported a reckless manslaughter instruction. *State v. Valenzuela*, 194 Ariz. at 407, ¶ 13. Likewise, given the lack of evidence about the homicide, a negligent homicide instruction appears warranted.

**¶26** Appellate counsel's failure to raise this issue "suggests that [Estevez's] counsel fell below objective standards in his representation." *See Bennett*, 213 Ariz. at 568, ¶ 24.

**¶27** Estevez must also show prejudice to establish a colorable claim. *See Bennett*, 213 Ariz. at 568, ¶ 25. In this case, he must show a reasonable probability that his lesser-included argument would have succeeded on appeal. *See id.*

**¶28** There is a reasonable probability that the argument would have succeeded. The lesser-included claim does not turn on disputed facts, nor is it a novel question. *See, e.g.*, *Wall*, 212 Ariz. 1; *Valenzuela*, 194 Ariz. 404. And not only is the argument legally sound, as expressed above, but it also follows the policy considerations for giving lesser-included instructions. As our supreme court has explained, "'[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." *Wall*, 212 Ariz. at 4, ¶ 16 (quoting *Beck v. Alabama*, 447 U.S. 625, 634 (1980)). "Giving a lesser-included offense instruction mitigates that risk." *Id.*

**¶29** By not allowing the jurors to consider reckless manslaughter, the court denied them the "'option of convicting on a . . . less drastic alternative' than . . . second-degree murder, and precluded [Estevez] from receiving 'the full benefit of the reasonable-doubt standard.'" *Valenzuela*, 194 Ariz. at 407, ¶ 13 (quoting *State v. Celaya*, 135 Ariz. 248, 253 (1983)). Estevez has therefore established a reasonable probability that the outcome of his case would have been different had appellate counsel raised the jury-instruction issue.

**¶30** Because Estevez has shown a reasonable probability that appellate counsel rendered ineffective assistance, he has stated a colorable

claim. *See Bennett*, 213 Ariz. at 568, ¶ 29. Typically, a petitioner who states a colorable claim "is entitled to a hearing to determine issues of material fact." Ariz. R. Crim. P. 32.13. But in cases like this, "when there are no material facts in dispute and the only issue is the legal consequence of undisputed material facts," a court need not hold a hearing and may rule on the claim's merits. *Amaral*, 239 Ariz. 217, 220, ¶ 12 (quoting *State v. Gutierrez*, 229 Ariz. 573, 579, ¶ 32 (2012)).

## CONCLUSION

**¶31**        Estevez's counsel was ineffective by failing to challenge the superior court's refusal to instruct the jury on the lesser-included offenses. We, therefore, grant review, vacate Estevez's conviction and sentence, and remand for a new trial. Because we grant relief on this ground, we decline to reach the remaining issues.

